# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**
        Plaintiff,

v.                                                              Case No. 04-CR-221

**JAMES CAREY,**
        Defendant.

---

## SENTENCING MEMORANDUM

In 1995, defendant James Carey applied for and received social security disability benefits. In order to obtain such benefits, defendant had to show that he was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under social security regulations, a person cannot collect benefits if he is engaged in "substantial gainful activity," i.e. "work activity that involves doing significant physical or mental activities," "done for pay or profit." 20 C.F.R. § 404.1572; see <u>Young v. Barnhart</u>, 362 F.3d 995, 1000 (7th Cir. 2004).

In January 1997, unbeknownst to the Social Security Administration ("SSA"), defendant started a landscaping and snow removal business called Lawn King. Defendant operated that business and a successor company called JT's Lawn Service, earning substantial amounts, while still collecting disability. He lied on benefit renewal forms submitted to the SSA, denying that he had done any work since becoming disabled. He also attempted to hide his work activity by placing many of the companies' business documents in the name of his wife and mother, and by using their bank accounts.

In 2004, defendant's estranged wife contacted the SSA and reported defendant's fraud. In September 2004, the SSA cut off his benefits, but by then he had improperly collected $159,078.20.

The government charged defendant in a five count indictment with three counts of wire fraud under 18 U.S.C. § 1343, based on his receipt of electronically deposited disability payments, and two counts of making false statements to the SSA under 42 U.S.C. § 408(a)(3), based on his denials of having done any work since being awarded benefits. Pursuant to a plea agreement with the government, defendant agreed to plead guilty to one count of wire fraud.

The Probation Office prepared a pre-sentence report (PSR) in advance of sentencing, recommending an offense level of 13 (base level 6, U.S.S.G. § 2B1.1(a), plus 10 based on the amount of loss, § 2B1.1(b)(1), and minus 3 for acceptance of responsibility, § 3E1.1), and a criminal history category of I. This produced an imprisonment range of 12-18 months.

However, prior to sentencing I advised the parties that the PSR had erroneously assigned a base level of 6 rather than 7. As I advised defendant during the plea colloquy, the count of conviction carried a statutory maximum penalty of 20 years (rather than 5 years as the PSR stated and plea agreement supposed), making defendant eligible for a base level of 7 under § 2B1.1(a)(1)(A).[1] This resulted in a final offense level of 14 and an imprisonment range of 15-21 months. Neither party objected to these revised guideline

---

[1] Section 2B1.1(a)(1) provides for a base level of 7 if the defendant was convicted of an offense referenced in the guideline, as wire fraud is, and the offense of conviction has a statutory maximum term of imprisonment of 20 years or more, as wire fraud does.

2

calculations, and neither side requested a departure pursuant to the Sentencing Commission's policy statements.

Therefore, I turned to the imposition of sentence in light of the factors set forth in 18 U.S.C. § 3553(a),[2] which are:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed–
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)  the kinds of sentences available;
>
> (4)  the advisory guideline range;
>
> (5)  any pertinent policy statements issued by the Sentencing Commission;
>
> (6)  the need to avoid unwarranted sentence disparities; and
>
> (7)  the need to provide restitution to any victims of the offense.

My task under § 3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005).

---

[2] After United States v. Booker, 125 S. Ct. 738 (2005), a court will typically follow a three-step sentencing process. First, the court must determine the applicable advisory guideline range. Second, the court must determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range clearly apply. Finally, the court must determine the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). United States v. Smith, 359 F. Supp. 2d 771, 772-73 (E.D. Wis. 2005).

I typically group the § 3553(a) factors into three categories: the nature of the offense, the history of the defendant, and the needs of the public and any victims. I analyze each category and in so doing consider the specific statutory factors under § 3553(a), including the advisory guidelines. United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005).

I first considered the nature of the offense. Defendant committed a non-violent crime, fraudulently obtaining social security benefits while working. Although eligible for benefits when he first applied – he did not lie on the initial application – defendant later started a profitable business and lied on subsequent benefit continuation forms. Defendant's efforts to conceal his business activities by, for example, depositing money into his wife and mother's bank accounts, constituted an aggravating factor. Further, as the investigating SSA agent indicated, social security programs depend on the honesty of the participants, and when someone takes advantage, as defendant did, both the taxpayers and those with genuine needs suffer.

To his credit, defendant did agree to plead guilty and accepted responsibility for his crime. He also agreed to sell his house, which was subject to forfeiture, and applied the proceeds – about $6700 – to restitution.

I next considered defendant's character and background. He was 36 years old, divorced, and had two children who lived with him. He appeared to be a good and responsible father.

Defendant had one prior conviction for disorderly conduct, but it was too old to score criminal history points, and no other record.

Because of his disability, defendant had a limited employment record. However, his resumption of work led to the present charges. At the time of sentencing defendant was surviving on food stamps and assistance from his church and family.

Finally, I considered the needs of the public. Defendant posed no physical danger to anyone, and I believed that he was unlikely to re-offend. He owed a substantial amount of restitution, which he could more easily pay by remaining in the community. However, I concluded that a period of confinement was necessary to reflect the seriousness of the offense, promote respect for the law and deter others from similar misconduct.

As noted, the guidelines called for a term of 15-21 months, which I generally found reasonable under all of the circumstances. However, in order to avoid unwarranted disparity, I reduced the range just slightly. See 18 U.S.C. § 3553(a)(6). The government chose to prosecute this case under the wire fraud statute, as it had every right to do. However, in other similar cases in this district the government has prosecuted social security fraud under 18 U.S.C. § 641 (or 42 U.S.C. § 408(a)(3)). In fact, the day before I sentenced defendant, I sentenced another individual who had defrauded the SSA but who the government had prosecuted under § 641, which carries a 5 year maximum penalty and thus a base offense level of 6 rather than 7 under U.S.S.G. § 2B1.1(a). Likewise, 42 U.S.C. § 408(a)(3), under which the government proceeded in counts four and five, carries a 5 year maximum penalty and thus a base level of 6 under the guidelines. Had defendant been charged under § 641 or pleaded guilty to count four or five his base level, too, would have been 6. I did not believe that this defendant should receive a harsher sentence

based on the government's choice of statute.[3] Therefore, I sentenced defendant as if the base level was 6.[4]

The resulting advisory range was 12-18 months, which I found reasonable. Defendant argued for a non-guideline sentence of probation with community confinement. However, given the nature of the offense and the need to deter others, I found that a sentence which did not include a substantial period of confinement would unduly depreciate the seriousness of the crime and would not satisfy the purposes of sentencing set forth in § 3553(a)(2). Therefore, I decided to impose a sentence within the modified range. Due to defendant's family situation, his minimal prior record, his efforts to pay restitution and the need to pay much more, I imposed a sentence of one year and one day, which I found sufficient, but not greater than necessary. I also ordered defendant to make restitution to the SSA and serve a three-year supervised

---

[3]The government did not intend to treat the present defendant differently than others. In fact, in their plea agreement the parties erroneously pegged the statutory maximum for the count of conviction at 5 years and the base offense level at 6. During the plea colloquy, I advised defendant that his maximum exposure was 20 years, but the mis-stated penalty was repeated in the PSR. Further, the government did not object at sentencing to treating the base level as 6.

[4]Some have asked why, when use of the guidelines leads to sentence disparity, the answer is to impose the lesser of two potentially applicable sentences. See, e.g., United States v. Tabor, No. 4:01CR3125, 2005 U.S. Dist. LEXIS 6649, at *22-23 (D. Neb. Apr. 18, 2005) (asking why, in response to the disparity between crack and powder cocaine penalties, the court should not punish powder cocaine defendants more harshly rather than reducing the sentence for crack defendants). The answer lies in the so-called "parsimony provision." 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."). When two sufficient and reasonable sentences are potentially applicable, the statute directs the court to choose the lesser one.

6

release term upon his release from prison. Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 25th day of April, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge